Jon M. Sands
Federal Public Defender
District of Arizona
Cary Sandman (AZ Bar No. 004779)
Amanda C. Bass (AL Bar No. 1008H16R)
Eric Zuckerman (PA No. 307979)
Assistant Federal Public Defenders
850 West Adams Street, Suite 201
Phoenix, Arizona 85007
cary_sandman@fd.org
amanda_bass@fd.org
eric_zuckerman@fd.org
602.382.2734 Telephone
602.382.2800 Facsimile

*Counsel for Petitioner*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Clarence Wayne Dixon,<br><br>　　　　Petitioner,<br><br>vs.<br><br>David Shinn, et al.,<br><br>　　　　Respondents. | No. CV-14-258-PHX-DJH<br><br>DEATH-PENALTY CASE<br><br>**MOTION FOR STAY OF EXECUTION**<br><br>**(Execution Scheduled for May 11, 2022 at 10 a.m.)**<br><br>**(Expedited Ruling Requested)** |

Pursuant to 28 U.S.C. § 2551(a)(1) and LRCiv 7.2 Petitioner Clarence Wayne Dixon, now incarcerated on death row at the Arizona State Prison Complex, in Florence, Arizona, by and through his attorneys, respectfully moves this Court for a stay of execution. **Dixon's execution is scheduled for 10 a.m. on May 11, 2022.**

1

On May 9, 2022, Dixon filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254 requesting that this Court issue a writ of habeas corpus granting him relief from his unconstitutional warrant of execution. Dixon's Petition is presently pending before this Court, providing this Court with jurisdiction to issue a stay of execution. *See* 28 U.S.C. § 2251(a)(1). This motion is supported by the accompanying memorandum.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **I.     Introduction**

Clarence Dixon is a 66-year-old legally blind man of Native American ancestry who has long suffered from a psychotic disorder – paranoid schizophrenia. Previously, an Arizona court determined that he was mentally incompetent and legally insane. An Arizona Department of Corrections psychologist found that Dixon "operates on an intuitive feeling level, with much less regard for rationality and hard facts," and that he is a "severely confused and disturbed prisoner." (Hearing Ex. 5 at 1–2.)[1]

For almost thirty years, Dixon has been unable to overcome his psychotically driven belief that all levels of the state and federal judiciary, including members of the Arizona Supreme Court, have conspired to deny him relief on a claim that the

---

[1] Dixon has filed concurrently with this motion a Petition for Writ of Habeas Corpus (ECF No. 86), and a Notice of Filing the State Court Record from the proceedings on his claim that he is mentally incompetent to be executed under the Eighth Amendment (ECF No. 88). Citations to the morning and afternoon transcripts of the Pinal County Superior Court hearing that occurred on May 3, 2022 are designated "Tr. 05/03/2022 a.m./p.m." followed by the page number. Citations to the exhibits admitted into evidence at the hearing are designated "Hearing Ex." followed by the exhibit number. Due to the multitude of errors in the transcription of the hearing's afternoon session, Dixon is also including with the state court record the official audio recording of the hearing released by the Pinal County Superior Court. *See* Order, *In re State of Arizona v. Clarence Wayne Dixon*, No. S1100CR200200692 (Pinal Cnty. Super. Ct., May 6, 2022) (granting release of the audio recording of the competency hearing that occurred on May 3, 2022). Finally, items from the record on appeal from the proceedings in the Pinal County Superior Court are designated "Pinal ROA" followed by the document's date, title, and page number.

Northern Arizona University ("NAU") police department lacked authority to investigate, arrest him, and collect his DNA in an unrelated 1985 criminal case.[2] Since 1991, Dixon has prepared an unending stream of pro se filings on this issue, fired his lawyers in the capital murder case so that he could continue to pursue this issue, and more recently has filed judicial complaints seeking disbarment of the Arizona Supreme Court Justices based on his belief that they are involved in an "extrajudicial killing, an illegal and immoral homicide created in the name [of] and for the people of Arizona." (Tr. 05/03/2022 a.m. at 86; *see also* Hearing Exhibits 25–29, 32)

Dixon first raised the NAU issue in a pro se petition for postconviction relief in July 1991, well before he was indicted for the 1978 murder. Dixon has recently filed judicial misconduct complaints seeking the disbarment of the entire Arizona Supreme Court. Dixon delusionally believes that he will be executed not because of the 1978 murder for which he was convicted, but rather because all levels of the judiciary have conspired to protect the State of Arizona University System, the State police departments, and the State government from a "politically disastrous, [] dark embarrassment that for many years a law enforcement entity has operated without statutory authority." (Hearing Ex. 12; *see also* Tr. 05/03/2022 a.m. at 69; *see also* Hearing Exs 25–29.)

In *Ford v. Wainwright*, the United States Supreme Court held that "the Eighth Amendment prohibits a State from carrying out a sentence of death upon a prisoner who is insane." 477 U.S. 399, 409–10 (1986). In so holding the Supreme Court reasoned that it "is no less abhorrent today than it has been for centuries to exact in penance the life of one whose mental illness prevents him from comprehending the reasons for the penalty or its implications." *Id.* at 417.

The Court clarified *Ford*'s substantive incompetency standard in *Panetti v.*

---

[2] Dixon was never arrested by the NAU police and his DNA was collected by the Arizona Department of Corrections.

3

*Quarterman* where it rejected "a strict test for competency [to be executed] that treats delusional beliefs as irrelevant once the prisoner is aware the State has identified the link between his crime and the punishment to be inflicted." 551 U.S. 930, 960 (2007). Repudiating a competency standard that focuses on a prisoner's mere "awareness of the State's rationale for an execution," *id.* at 959, the Court held that a prisoner must also have a rational understanding of the State's reason for his execution—that is, he must be able to "comprehend[] the *meaning and purpose* of the punishment to which he has been sentenced," *id.* at 960 (emphasis added). Because Dixon does not have a rational understanding of why he is being executed, the Eighth Amendment's prohibition against cruel and unusual punishment bars his execution and this Court's intervention is required.

## II. Procedural Status

The Supreme Court has clearly established that a petition for writ of habeas corpus raising an Eighth Amendment claim of mental incompetency to be executed is unripe until an execution is imminent. *See Panetti*, 551 U.S. at 947 ("[W]e have confirmed that claims of incompetency to be executed remain unripe at early stages of the proceedings."); *Stewart v. Martinez-Villareal*, 523 U.S. 637, 645 (1998) (competency claim necessarily unripe until state issued warrant of execution). At issue in *Panetti* was whether the restrictions on second or successive habeas petitions found in § 2244(b) of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") applied to "a § 2254 application raising a *Ford*-based incompetency claim filed as soon as that claim is ripe." 551 U.S. at 945. The Supreme Court held that it does not. *Id.* at 947 ("The statutory bar on 'second or successive' applications does not apply to a *Ford* claim brought in an application filed when the claim is first ripe. Petitioner's habeas application was properly filed, and the District Court had jurisdiction to adjudicate his claim.").

In *Panetti*, following the Texas courts' scheduling of the petitioner's execution date and denial of his mental incompetency claim, he "returned to federal

court, where he filed another petition for writ of habeas corpus pursuant to § 2254 and a motion for stay of execution." 551 U.S. at 938, 941. The United States District Court for the Western District of Texas "granted petitioner's motion[] . . . to stay his execution[]" while it adjudicated the merits of Panetti's habeas petition raising the Eighth Amendment incompetency to be executed claim. *Id.* at 941. Dixon's Petition arrives to this Court in the very same procedural posture, warranting a similar course of action.

On April 5, 2022, the Arizona Supreme Court issued a warrant of execution scheduling Dixon's execution date for May 11, 2022. Warrant of Execution, *State of Arizona v. Clarence Wayne Dixon*, No. CR-08-0025-AP (Ariz. Apr. 5, 2022); *see also* Ariz. R. Crim. P. 31.23(c). On April 8, 2022, undersigned counsel filed a petition in the Pinal County Superior Court pursuant to Arizona Code to determine Dixon's mental competency to be executed pursuant to A.R.S. § 13-4021 *et seq*. (Pinal ROA 44.) That same day, the Pinal Superior Court found Dixon's motion timely and that it "satisfies the minimum required showing that reasonable grounds exist for the requested examination and hearing, within the meaning of A.R.S. § 13-4022(C) and as otherwise required *by Ford v. Wainwright*, 477 U.S. 399 (1986)." (Pinal ROA 43.) The court scheduled a hearing on Dixon's *Ford* claim under § 13-4022(C) and ordered that he be evaluated by two experts, one nominated by the State and the other by Dixon.

The hearing on Dixon's *Ford* claim was held on May 3, 2022, concluding at approximately 3:30 p.m. that afternoon. Close to midnight on May 4, 2022, the superior court issued its ruling finding that Dixon failed to prove either by a preponderance or by clear and convincing evidence that he is mentally incompetent to be executed under the Eighth Amendment. (Pinal ROA 8.) Dixon received the complete transcript of the hearing on May 5, 2022. On May 7, 2022, Dixon filed pursuant to A.R.S. § 13-4022(I) a petition for special action review of the superior court's denial of his *Ford* claim in the Arizona Supreme Court. Petition for Special

Action, *Clarence Wayne Dixon v. Hon. Robert Carter Olson*, No. CV-22-0117 (Ariz. May 7, 2022). On May 9, 2022, the Arizona Supreme Court declined jurisdiction over Dixon's petition. Order, *Dixon v. Hon. Robert Carter Olson*, No. CV-22-0117 (Ariz. May 9, 2022). 28 U.S.C. § 2254(b)(1)(A) requires Dixon to exhaust state court remedies before applying to this Court for a writ of habeas corpus. He has done so.

In sum, under *Panetti*, Dixon's federal habeas petition raising a *Ford* claim was not ripe until the Arizona Supreme Court set his execution date on April 5, 2022. Furthermore, pursuant to 28 U.S.C. § 2254(b)(1)(A), Dixon was barred from filing a petition for writ of habeas corpus raising his *Ford* claim until he exhausted the remedies available to him in state court. The superior court rendered its judgment denying his *Ford* claim in the late-night hours of May 3, 2022. (Pinal ROA 8.) Dixon expeditiously sought the Arizona Supreme Court's review of that decision and, the same day that court declined jurisdiction, has filed a Petition for Writ of Habeas Corpus and the instant motion—all less than one week after the Pinal County Superior Court rendered its judgment on Dixon's *Ford* claim.

### III. Equitable Principles Weigh in Favor of Granting Dixon a Stay of Execution

The Supreme Court made it clear in *Barefoot v. Estelle*, 463 U.S. 880 (1983), *superseded on other grounds by* 28 U.S.C. § 2253(c), that a stay should be granted when necessary to "give non-frivolous claims of constitutional error the careful attention that they deserve." 436 U.S. at 888. When a court cannot "resolve the merits of [a claim] before the scheduled date of execution," a stay must be granted. *Id.* at 889. It is axiomatic that a court may grant a stay of execution if the moving party establishes that: (1) he has a strong likelihood of success on the merits; (2) he will suffer irreparable injury unless the injunction issues; (3) the balance of hardships tips in his favor; and (4) if issued, the injunction would further the public interest." *Beardslee v. Woodford*, 395 F.3d 1064, 1067 (9th Cir. 2005); *see also*

*Glossip v. Gross*, 135 S. Ct. 2726, 2736–37, *reh'g denied*, 136 S. Ct. 20 (2015) (stating that plaintiff seeking preliminary injunction must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest"). Consideration of these factors in Dixon's case dictates a finding that a stay of execution is warranted.

        i.      <u>Dixon's *Ford* Claim is Likely to Succeed on the Merits</u>

Dixon is likely to succeed on the merits of his *Ford* claim because the Eighth Amendment prohibits his execution. As Dixon's Petition for Writ of Habeas Corpus demonstrates, he suffers from a severe mental illness, schizophrenia with paranoid ideations the hallmark of which is delusional and contaminated thought content. As a result of this psychotic illness, Dixon has experienced long-standing hallucinations and persecutory delusions, and consequently does not have a rational understanding of why the State is attempting to execute him. *See Panetti*, 551 U.S. at 958; *see also Ford*, 477 U.S. at 409. In its order denying Dixon's *Ford* claim, the state court contravened and unreasonably applied the *Panetti* standard. (ECF No. 86, Section IV.)

The state court also based its denial on unreasonable factual determinations, including by inexplicably ignoring the report and testimony of Dixon's psychiatric expert, Lauro Amezcua-Patino, M.D., and instead relying on cherrypicked observations from the State's expert, Carlos Vega, Psy.D., who conducted his evaluation of Dixon in 70 minutes over video, admitted never asking Dixon why he believed he was being executed (the critical question under *Panetti*), testified that he disagreed with and capriciously refused to apply the DSM-5 diagnostic criteria for schizophrenia, delusions, persecutory delusions, and failed to apply the DSM-5 diagnostic criteria to his own diagnosis of antisocial personality disorder. (ECF No. 86, Sections III–IV.) Dr. Vega then topped his testimony off with an admission that he had done "very little" research to determine what is required to perform an

1  evaluation to determine whether a prisoner is competent to be executed, and
2  misstated the standard for competency as "just a question of you know connecting
3  this murder to the execution." (Tr. 05/03/2022 p.m. at 101.) But *Panetti* makes it
4  clear that a prisoner's <u>*awareness*</u> of the crime and punishment is insufficient to
5  establish competency; rather, the prisoner must rationally understand the meaning
6  and purpose of his execution. 551 U.S. 959-60. Dr. Vega also testified that Dixon
7  has a rational understanding of the State's reasons for his execution based, in part,
8  on Dixon's pro se writings, despite admitting that he "didn't read" and "just barely
9  [] looked at" them. (Tr. 05/03/2022 p.m. at 93.)

10       The record of the *Ford* proceedings leaves no room for doubt that the state
11 court's denial of Dixon's *Ford* claim contravened and unreasonably applied
12 *Panetti*, and was based on unreasonable factual determinations disentitling that
13 adjudication to deference from this Court under § 2254(d)(1) and (2). And because
14 the State failed to rebut the overwhelming evidence demonstrating that Dixon does
15 not rationally understand the State's reasons for his execution as a function of the
16 delusional thought content to which his schizophrenic illness gives rise, Dixon is
17 likely to succeed on the merits of his *Ford* claim on de novo review. (ECF No. 86,
18 Sections III–IV.)

19       As alleged in Dixon's concurrently filed petition for writ of habeas corpus,
20 Dixon's paranoid schizophrenia—a psychotic illness diagnosed by clinical and
21 forensic psychiatrist Dr. Amezcua-Patino, and which the superior court found
22 proved by clear and convincing evidence—causes Dixon to experience
23 hallucinations and persecutory delusions, including that the state and federal
24 judiciaries are conspiring to execute him in order to save state agencies from
25 political embarrassment related to his meritless claim against the NAU police. Both
26 experts at the hearing, including the State's expert, Dr. Vega, admitted that Dixon
27 fixates on a "deluded notion that the government has refused to agree with his legal
28 argument, not because his argument is not sound but rather the government is afraid

of the consequences of admitting they are wrong." (Hearing Ex. 31 at 6.) Both experts also agreed that Dixon has no memory of the crime for which he was sentenced to death. (Hearing Ex. at 6; Tr. 05/03/2022 p.m. at 10–12.)

At the hearing, Dr. Vega testified that he never asked Dixon why he believes he is being executed, explaining "I really didn't have to ask him what he believed" because "I just did not think it was necessary." (Tr. 05/03/2022 p.m. at 100–01.) Dr. Vega also testified that Dixon's delusions meet the DSM-5 criteria for delusions, but that he believed the DSM-5 definition of a "delusion" was incorrect and therefore Dixon is not delusional. (Tr. 05/03/2022 p.m. at 70–77.) Dr. Vega testified that the DSM-5 definition of "persecutory delusions" is likewise incorrect because it "watered down the definition of delusions[.]" (Tr. 05/03/2022 p.m. at 77.) Dr. Vega stated that Dixon shows no signs of schizophrenia, despite acknowledging that Dixon was consistently diagnosed with schizophrenia by various psychiatrists and psychologists over the span of four decades, and despite admitting that Dixon satisfied the DSM-5 criteria for the illness. (Tr. 05/03/2022 p.m. at 77–85.) Instead, Dr. Vega diagnosed Dixon with antisocial personality disorder (ASPD), even though he admitted that Dixon did not satisfy the DSM-5 criteria for that diagnosis. (Tr. 05/03/2022 p.m. at 87–91.) And while Dr. Vega pointed to Dixon's writings as evidence of his rational understanding and thus mental competency, he also admitted that he "just barely" read them. (Tr. 05/03/2022 p.m. at 93.)

When asked by counsel for the State, "[D]oes what Dixon's specific diagnosis is, ultimately affect your opinion about whether he has a rational understanding of the state' reason for his execution?" Dr. Vega responded "Yeah, of course it does." (Tr. 05/03/2022 p.m. at 43.) Dr. Vega then went on to testify that Dixon's primary diagnosis is antisocial personality disorder ("ASPD").[3] (Tr.

---

[3] Dr. Vega also testified that he disagreed with the diagnosis of schizophrenia, but if that diagnosis were correct, it would be "comorbid to the principle [sic] diagnosis of a personality disorder[.]" (Tr. 05/03/2022 p.m. at 77.) When confronted

9

05/03/2022 p.m. at 43.)

Rejecting Dr. Vega's ASPD diagnosis and non-diagnosis of schizophrenia, the superior court found that Dixon proved by clear and convincing evidence that he "has a mental disorder or mental illness of schizophrenia[.]" (Pinal ROA 8 at 2.) Nevertheless, the court inexplicably found testimony presented from Dr. Vega "persuasive" and relied on that testimony to find that Dixon could not meet his burden to demonstrate that he is not competent to be executed. (Pinal ROA 8 at 4.) The Superior Court's reliance on Dr. Vega's observation that Dixon has a rational understanding of the State's reasons for his execution is also objectively unreasonable because Dr. Vega testified that Dixon's "specific diagnosis [] ultimately affect[s his] opinion about whether he has a rational understanding of the State's reason for his execution[]" (Tr. 05/03/2022 p.m. at 43.), and the superior court found Dr. Vega's non-diagnosis of schizophrenia erroneous (Pinal ROA 8 at 2). By Dr. Vega's own admission, if his non-diagnosis of schizophrenia was erroneous, then his related opinion about whether Dixon rationally understands the State's reasons for his execution cannot be relied upon. (Tr. 05/03/2022 p.m. at 43.)

While acknowledging *Panetti*'s standard, the superior court failed to correctly apply it. (Pinal ROA 8 at 2–4.) In finding Dixon's mental competency claim unproved, the court relied on statements from Dixon that reflected his

---

with the DSM-5 diagnostic criteria for antisocial personality disorder, which demonstrates that schizophrenia cannot be comorbid to antisocial personality disorder, Dr. Vega had no coherent response. (Tr. 05/03/2022 p.m. at 91–92.) *See also e.g.*, *Rogers v. Dzurenda*, 25 F.4th 1171, 1188 (9th Cir. 2022) (". . .[I]t was accepted at the time of Rogers's trial that a diagnosis of schizophrenia preempts, or precludes, a diagnosis of ASPD. This information was readily available in the ASPD section of the DSM-III. . . . As Dr. Molde later testified at the evidentiary hearing before the district court, ASPD by definition requires a normal mental status examination. The preemption line of questioning was important because Dr. Gutride diagnosed Rogers with ASPD, but his reports described symptoms consistent with schizophrenia, and therefore symptoms that were inconsistent with the normal mental status examination that ASPD requires.").

awareness that the State says it "want[s] to kill me for murder[.]" (Pinal ROA 8 at 2–4) But that is precisely the "too restrictive" inquiry that the Supreme Court rejected in *Panetti*. 551 U.S. at 956–58. Dixon's awareness of the State's rationale does not show he has a rational understanding of it. *Id.* at 958–59 ("The potential for a prisoner's recognition of the severity of the offense and the objective of community vindication are called into question, . . . if a prisoner's mental state is so distorted by mental illness that his awareness of the crime and punishment has little or no relation to the understanding of those concepts shared by the community as a whole.").

The superior court also characterized Dixon's reaction to the judiciary's denial of his legal claims as suggesting only his perception of judicial "bias." (Pinal ROA 8 at 2–4.) But that Dixon believes there is judicial bias is irrelevant to the critical question of whether Dixon's perception of bias is grounded in reality. The evidence shows it is not: the judges in Arizona are not, as Dixon believes, orchestrating his execution as part of a coverup for the NAU police's illegal investigative, arrest, and DNA collection activities back in 1985—all in order to protect the NAU police and government entities from the embarrassment of that exposé. (Hearing Ex. 2 at 3–4; Tr. 05/03/2022 a.m. at 89; Tr. 05/03/2022 p.m. at 44-45.) Both experts agreed that Dixon has a delusional notion that the judicial system and actors in it are conspiring to deny his claim against the NAU police despite knowing it is meritorious in order to protect the government from embarrassment. (Tr. 05/03/2022 a.m. at 69; 05/02/2022 p.m. at 24; Hearing Ex. 31, Vega Report at 6.)

As discussed elsewhere, the superior court found that Dixon proved by clear and convincing evidence that he has paranoid schizophrenia. (Pinal ROA 8 at 2.) However, it dismissed the unrefuted medical evidence of Dixon's psychotic delusional thought process resulting therefrom as only "arguably delusional" and merely reflective of Dixon's "favored legal theory." (Pinal ROA 8 at 2–3.) Again,

Dixon does have a favored legal theory, but that alone begs the relevant question: whether that theory is grounded in a serious mental illness which impairs Dixon's rational understanding of the reasons for his execution. *Panetti* required the Superior Court to focus on that question.

The superior court should have assessed Dixon's mental competency within the framework of his schizophrenic illness and the psychotic delusions to which it characteristically gives rise. *Id.* at 960 ("The beginning of doubt about competence in a case like petitioner's is not a misanthropic personality or an amoral character. It is a psychotic disorder."). Applying *Panetti*'s framework here, the superior court failed to assess how Dixon's favored legal theory is inextricably linked to his delusional, psychotic-driven belief that ,"[t]hey say they want to kill me because I killed someone. But I know that they want to kill me because they don't want to be embarrassed"—that is, embarrassed by the exposé that the NAU police in 1985 acted without statutory jurisdiction by arresting him in an unrelated criminal case, investigating, and collecting his DNA. (Tr. 05/03/2022 a.m. at 62–66; *see also* Hearing Ex. 31 at 6.) Under *Panetti*, "the legal inquiry concerns whether these delusions can be said to render [Dixon] incompetent." *Id.* at 956. The evidence before the superior court shows it does.

In sum, the superior court contravened and unreasonably applied *Panetti*, ignored evidence in the record before it demonstrating that Dixon experiences delusions as a result of his paranoid schizophrenic illness that prevent him from rationally understanding why he is being executed, and made findings—including as to the "persuasive[ness]" of observations offered by Dr. Vega—that are flatly contradicted by the record and the court's finding that Dr. Vega's opinion that Dixon does not have schizophrenia was not credible. (*See* Pinal ROA 8 at 2.) Consequently, the state court's rejection of Dixon's *Ford* claim contravened and unreasonably applied *Panetti*, and was based on unreasonable factual determinations. 28 U.S.C. § 2254(d)(1), (2).

Because Dixon's Petition for Writ of Habeas Corpus demonstrates that the state court's reliance on an expert who misunderstood the competency standard under *Panetti*, who disregarded the DSM-5 definitions for schizophrenia, delusions, persecutory delusions, and antisocial personality disorder in favor of his own more restrictive and made up definitions, and who also admitted to not reading the very documentary evidence on which he based his ultimate opinion, the state court's decision is disentitled to deference under AEDPA. Dixon's *Ford* claim has a substantial likelihood of success under de novo review.

### ii. Dixon Will Suffer Irreparable Harm Absent a Stay and the Balance of Hardships Tips in his Favor

As demonstrated herein, a stay of execution is necessary because otherwise Dixon will be executed in violation of the Eighth Amendment. *Ford*, 477 U.S. 399; *Panetti*, 551 U.S. 930. That harm is clear, serious and irreversible. Moreover, a stay of execution in this case will not substantially harm the State of Arizona. Dixon seeks merely to maintain the status quo until this action can be resolved on its merits. This is the very purpose of a preliminary injunction. *See Tanner Motor Livery, Limited v. Avis, Inc.* 316 F.2d 804, 808 (9th Cir. 1963) ("It is so well settled as to not require citation of authority that the useful function of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits."). Even if the stay is granted in error, and Dixon's Petition for Writ of Habeas Corpus ultimately denied, then the stay may be lifted and the State can expeditiously proceed towards a new execution date. Common sense dictates that this factor weighs in Dixon's favor.

### iii. A Stay Furthers the Public Interest

Finally, a stay here would further the public interest, which is served by enforcing constitutional rights and by the prompt and accurate resolution of disputes regarding constitutional rights. See *Cooey v. Taft*, 430 F. Supp. 2d 702, 708 (S.D. Ohio 2006) ("[T]he public interest has never been and could never be served by

rushing to judgment at the expense of a condemned inmate's constitutional rights.")

Dixon acknowledges that the State has a "strong interest in proceeding with its judgment." *Beardslee v. Woodford*, 395 F.3d 1064, 1068 (9th Cir. 2005). However, the State's retributive purpose for imposing capital punishment is called into question where an individual's mental state is so distorted "that his awareness of the crime and punishment has little or no relation to the understanding of those concepts shared by the community as a whole." *Panetti*, 551 U.S. at 959. The execution of a mentally incompetent person "serves no retributive purpose." *Id.* at 933. It "simply offends humanity." *Id.* at 958 (quoting *Ford*, 477 U.S. at 407–08). The State itself and the citizens of Arizona have a compelling interest in ensuring that such an offense does not occur.

## IV. Conclusion

For the foregoing reasons, Dixon respectfully requests that this Court (1) issue a stay, enjoining Dixon's execution which is currently scheduled for May 11, 2022 at 10 a.m.; and (2) permit full briefing and argument on his *Ford* claim challenging his mental competency to be executed as alleged in the concurrently filed petition for writ of habeas corpus.

Respectfully submitted this 9th day of May, 2022.

Jon M. Sands
Federal Public Defender
District of Arizona

Cary Sandman
Amanda C. Bass
Eric Zuckerman
Assistant Federal Public Defenders

s/ Amanda C. Bass
Counsel for Petitioner

**Certificate of Service**

I hereby certify that on May 9, 2022, I electronically filed the foregoing Motion for Stay of Execution with the Clerk's Office using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ Jessica Golightly
Assistant Paralegal
Capital Habeas Unit

15